The first case for argument this morning is Qualcomm Incorporated v. Intel Corporation, 22023-1710. Counsel, whenever you're ready. Thank you, Your Honor. May it please the Court. On a 2-1 decision, the Board took away a property right based on a new claim construction that 1. does not comport with the Board's original analysis, 2. contravenes this Court's guidance in the original appeal, and 3. is not the broadest reasonable interpretation in light of the intrinsic record. When you say new claim construction, I'm sorry, I'm having trouble hearing you. I am too. This is Judge Prost. I can't hear you, Judge Toronto. Me too. Still can't hear anything. I'm seeing your lips moving, but you've got only a faint voice off and on. Apologies. We'll pause the argument momentarily while we work to get this restored. Thank you. Can you hear me now or no? Yes. Okay, I just switched the microphones. Thanks. Sorry for the pause. I was just asking you the question. You said a new claim construction. By new, you don't mean, do you, that this was not a construction that had been argued by Intel, just that it was different from the last time the Board adopted a construction? Yes, Your Honor. I was referring to the Board adopting a new construction that is, for all purposes here, the issue before the Court is the opposite of the construction it adopted in the original IPR proceedings. So why is it wrong? Okay, let me jump to that. I'll jump straight to the evidence. This Court directed the Board to consider the specification in particular and some other pieces of evidence. And when you look at the specification, it consistently contrasts the temporary buffers of the prior art from the hardware buffer of the claim. So the hardware buffer has to be understood in the context of that consistent, unequivocal contrast between temporary buffer on the one hand and hardware buffer on the other. And the Board understood both times that a temporary buffer is something that is allocated during runtime. So what we mean by a permanent hardware buffer is something that's permanently assigned. It's not one of these temporary buffers. So that's point one, the consistent contrast. I'm sorry. So one of the frustrations, at least I have experienced in this case, is that people use terms that are being defined in the definition. That's not helpful. So you've got to take the word permanent out of your definition. Here's what I think I understand you to mean. A buffer intrinsically performs a temporary function, which is as a way station as data is moving from one location to another, one residence to another. That's not what we're talking about, about temporary, because all buffers are that. You're suggesting, I think, that there is a set of memory cells with lines going into and operating those memory cells that are used only for buffering and never, including the next time the machine is booted up for this buffering function. Is that a correct understanding? I think what you mean by permanent? Yes, I think largely so. Let me see if I can repeat it, avoiding the word permanent, but in the context of what you're asking, Judge Toronto, which is that, yes, in the context of this specification, the hardware buffer is there. It does not need to be allocated. The memory cells are devoted to this specific purpose. So just so you can help me understand some things that I've had a little trouble understanding. The board and Intel both use the word dedicated. They mean that word. They use that word to mean something that I think is the crucial difference between the two sides position. They mean dedicated during the, let's just call it the computer session, from the time you boot up until the time you turn the power off. Let's just call that a day, okay, just to simplify the expression. During that day, this set of memory cells is dedicated to the buffering function in the sense that that set of memory cells is not being used as the final resting place of the software that's being put into the system memory. Is that, do I understand? So your understanding of permanent has to be broader than that. Yes. Or more extended than that, I'm sorry. That's correct. We also use dedicated in our construction to capture the notion that this set of memory cells, this thing, this portion of the hardware is set aside to be used for the purpose of buffering the data in the hardware and getting it in conjunction with the guidance. I'm sorry. I'm going through the same process right now that I went through both several years ago and when reading the briefs. Set aside doesn't help. The other side's view is these memory cells are also set aside. You have to keep focusing on what the difference is between your set aside and their set aside. The way I would say it in plain English, Judge Toronto, is that it's already been set aside. So in that day, the day wakes up, the day begins, it's already there. You don't have to go through the process like the prior art in creating, i.e., allocating the temporary buffer. And you see that at column two where it's talking about the temporary buffer being allocated. You both have to use, you take it out of a heap of a bunch of stuff. You could use this memory, these memory cells for this purpose or that purpose. The dedicated port is, I agree, not necessarily getting to the temporal limitation. It's saying, okay, we're going to set aside these cells to use as a buffer. But the permanent is reflecting that a temporary buffer not only is going to temporarily perform something, but it's temporarily in existence. It's allocated after the day has begun. And the patent contrasts that temporary buffer, the temporary in existence, the steps that the system memory has to take in grabbing. Today, it's going to be this piece out of the system memory and maybe this big or this small. I think I recall that there are specification passages that do use the term temporary. There's some argument about whether that is the point of contrast that is being made in those sentences. But where in the specification is there an explanation of your particular understanding of what temporary means in this context? Which I think I understand, which is that there is a set of memory cells that today, tomorrow, the next, the days after, will always be used for this function. And Intel's and now the board majority's view is, no, they are dedicated for the day. But who knows what they'll do tomorrow? Exactly, Your Honor. And I think I'll point you to a couple of specification passages and figure three. And my first top line point is that we, of course, have to read the patent as a whole. And I think one of the errors that the board and Intel did is looking at just very discreet excerpts and demanding that we talk about temporary buffer in the same sentence as hardware buffer. And, of course, the person of ordinary skill in the art here, a highly skilled artist, doesn't need that. They're going to look at the full context of the specification. So when the patent starts off by saying we have problems with this extra memory copy operation that entails both allocating the temporary buffer and then using it, we want to avoid that. We have to get to a really short, we're going to be more efficient with our communications, get to a really short. I'm sorry, I'm going to interrupt you again. Where in the spec is there a mention of allocating memory cells to perform the function? Sure, your honor, I don't want to misrepresent there isn't a isn't exactly that phrase, but the term is allocate. So at column two, line 25. This is in the background section of the patent. And it's discussing these prior art systems in which a temporary buffer. One way of performing such loading, this is at line 25, is to allocate a temporary buffer. OK, thank you. You're welcome. And what you know what that means to the person of ordinary skill in the art is that's the system memory again grabbing this set of cells this day, totally different set of cells another day, different sizes. There's flexibility in system memory. That's a benefit of doing it this way. But what our inventors came up with, and you see in the detailed description of the patent starting at column four. You see that, for instance, at column four lines 46 to 47. The direct scatter loading technique avoids use of a temporary buffer full stop. I will say there is a there's a lot going on in these claims and the way it is able to get the data more efficiently isn't just the hardware buffer. We have to look at the claims as a whole. But what the hardware buffer does is enable what the inventors came up with. They wanted to avoid having to do this allocation of a temporary buffer and using that temporary buffer and all of that stuff that has to happen. They set up the hardware. So one of the things that was not clear to me is something that you at least mentioned, I think, and maybe your reply brief. I don't remember, but that I don't I don't think I saw in Dr. Renard's declarations, which is obviously some time and resources are necessary to allocate a set of memory cells for this purpose. I don't remember Dr. Renard ever mentioning that as one of the efficiencies. As opposed to all of the rest. And then my natural follow up to that question is all of the rest could couldn't it be, in fact, performed with a your view is a temporary buffer, which is an allocation of memory cells offering function today. All the rest could be done about, you know, sending a single of the total batch of addresses at once instead of in each header of each data packet so that all of that kind of stuff. I didn't understand and I thought maybe there's no longer really a dispute that none of that is in any way dependent on whether the buffer is hardware or not. I'll start with Dr. I can go in the order you presented them, Your Honor. So, in terms of Dr. Reinhardt's testimony at appendix 3867, 3868, 3877, and 3878, you will see him consistently talking about the benefits of using a hardware buffer because it is implemented. It's permanently assigned. The person of ordinary skill in the art. But he does that an extremely high level of generality, right? The difference between designing something in a set of wires and having a set of wires that are used for different purposes. You can save certain kinds of expenses and you lose some flexibility. But for one thing, I don't think he ever mentions saving the cost of allocating. And in addition to that, he never explains what the physical configuration specialization is of your so-called hardware buffer. In terms of the efficiency, we're not solely relying. It's not a narrow claim that's only about reclaiming a hardware buffer. That's not it. It's the hardware buffer being used at the direction of the scatter load controller so that the hardware buffer can get that data directly to system memory. So, it's the coupling of using the hardware buffer. That was the solution. The problem was we've got extra memory operations, copy operations that make this take longer than we want. And this particular solution is to employ the hardware buffer, dedicate that permanently. You don't have to then create it and move it around. If you read the claims the way the board did, you're just back to the prior art where you're allowing a temporary buffer to be allocated and moving it around, which is what the patent over and over says we are avoiding. I don't think that's quite correct in the sense that it seems like when you read the patent, it's really trying to tell a story about changing up what the buffer operations are. It's less clear to me that the patent is trying to communicate that there's something about the physical nature of the buffer itself that is distinctive about the invention over the prior art. In other words, this invention seemed to be much more about how we want to get the header information up front and then send the data segments along separately and then feed individual data segments directly into the system memory from the buffer. I know it's called the hardware buffer, but let's just call it the buffer for now. It's that sequence of buffer operations that's distinctive. What I'm trying to struggle with, too, is the idea of what is a hardware buffer. I am not familiar with that term, or at least I don't think I've ever come across it before. Is it fair to say that it is not a term of art with a well-established meaning in the field of computers? Yes. Therefore, what it comes down to is what can we glean, what can we extract from the intrinsic evidence in terms of arriving at the most appropriate understanding of this term hardware buffer in the context of this patent? Yes, Your Honor. Obviously, taking into account brought us reasonable interpretation. Sure, of course. And it has to be reasonable under that interpretation. So let me see if I can unpack a few things here. Hardware has to have some meaning. This court already said if we're just going to treat it as buffer, we're not giving the full term and all the words meaning. So hardware has to mean something. And in the context of this patent, when you have the contrast between the two-word term temporary buffer that's allocated and hardware buffer, key point one, that's a contrast. Judge Chen, in terms of the data segments, that is how the inventors were able to do it this way, because they used the hardware buffer that's not going to change. It's going to stay the same, maybe not big enough sometimes. The data can come in there, and in conjunction with the way the data is divided up, then the scatter load controller can send it directly from that hardware to its final destination in system memory without having to do the copying of data around. So they have to be viewed in conjunction because that's how the inventors set it up in order to achieve what they first set out to do, which is let's get rid of these extra copy operations that require creating the temporary buffer and using it. And just so I understand, I think you might have had this colloquy with Judge Toronto already. If your claimed invention wasn't just for your conception of a hardware buffer, but it also encompassed the use of a temporary buffer for the purposes of these novel buffer operations, isn't it true that the invention would still work as intended? Perhaps it wouldn't work as fast as you believe it would work with a hardware buffer, because then during runtime you have to set up the temporary buffer. But barring that, the invention would still operate just as planned, while at the same time skipping over the additional copy operation that takes place in the prior art set of buffer operations. Is that fair to say? No, I don't think so, Your Honor. I think this dovetails with Judge Toronto's question. Number one, we're not talking about other ways to transfer data efficiently. We did not claim all such ways. We claimed a very specific configuration that employs the hardware buffer to replace and take out the step of the temporary buffer. Yeah, but what I'm asking is, isn't it true that assuming I accept your understanding of hardware buffer, why wouldn't it be that a temporary buffer instead of a hardware buffer could do the very buffer operations that are contemplated? Sending the data segments separately from the header information. Header information comes first. Directly scatter loading the data segments from the temporary buffer directly into the system memory. Your Honor, I think an excellent visual representation to respond to that comment is the descents figure at Appendix 85, because it's showing we had a prior. The data still has to come in through something, right? So the hardware buffer, the hardware is there. What the prior art did was have it come in through the hardware. You see that at Appendix 85, then get copied into a temporary buffer because there's all sorts of speed issues with system memory. And you got to let it catch up once it's in the system memory before you can finally put it where you want it to go. What the inventors did is utilize this pre-existing hardware that's going to come in through this. And they said, we're going to use that. It has drawbacks. It's fixed. It might be too small at times. We can't change it. We don't have flexibility the way we do with temporary buffers. But we will employ that in conjunction with. Perhaps I'm not explaining myself completely. Are you saying that if you swapped out your version of a hardware buffer with a temporary buffer, the claimed invention would not work? The temporary buffer would not be able to, you would not be able to scatter load from a temporary buffer the individual data segments into the system memory. You wouldn't be able to receive the header information first before receiving the individual data segments into that temporary buffer. You're not saying that, right? No, but I'm saying that's not our invention. We're not going to accuse that. We're not covering that. That's the boundaries of our invention. We didn't claim just using a temporary buffer. And again, that goes back to the specification that unequivocally says problems with temporary buffer, they're bad. And we're going to employ the hardware buffer in this special purpose. You can think of the hardware buffer as special purpose. Temporary buffers are created out of general purpose system memory or memory. The hardware buffer has a special purpose. And it wouldn't have a special purpose if you had to go through the step of creating it each time. And it might be something different from day one to day two to day ten. It's got a consistent special purpose. And figure three is a good visual representation of that because it shows the hardware buffer in the USB controller. We understand the board rejected our view that the term should be defined in the context of the USB controller as being too narrow. But as the dissent makes clear, the person of ordinary skill in the art would understand the hardware buffer is in the nature of something like USB controller. We don't have to define the full context of that. But it's going to be something like that in the hardware. You're employing the hardware consistently from the beginning. It's permanently assigned to that role of transferring data. And then it's where it sends the data is at the direction of the scatter loop. Can I just ask, and perhaps you don't know the answer to this, but I will tell you this is what I've been spending weeks in some sense years trying to understand. Tell me something physical about the configuration of a forever dedicated buffer that's different from the configuration of the great mass of memory cells for executing programs. Just even one thing. Sure, your honor. And the way I will. It harkens back to the last argument where we talked about etching. I don't know that etching is the right technological term instantiate made part of. You'd see it in a circuit diagram. It's there. It's not something that can change. And you can only sort of totally represent it. And because I know no because I sort of had the sense when I read the board opinion that what I was trying to get at like repeatedly using the term substantive in the last opinion was get down to the level of wires. Tell me about wires. I appreciate that your honor. And I know it's probably dissatisfying that we didn't do that. I think the board and the parties approached it with the perspective of what resolves the nature of the controversy here. And we have a fuller construction that we attempted to offer in terms of a dedicated buffer. So it's got a specific purpose. You read it in the context of the rest of the claim in terms of what its dedicated purpose is. It's being operated on and used to scatter load data at the direction of the controller. And it's distinct from system memory. And the permanent was to address the dispute about whether it can be the type of prior art temporary buffer. So I appreciate that we didn't get down to the level of the wire. But because the board has consistently understood when we're looking at what is the asserted art, the board has always understood the asserted art has a temporary buffer. And so the nature of the dispute, unfortunately, and that's that's the what intermediate storage area in one of the two in two of the three RAM memories in Svensson is allocated temporarily during runtime.  Your honor. And they could probably describe it in considerable detail. But the key point for this, I will just say again, I think you get my point. Boy, was that what I was looking for? I understand your honor. Thank you. Let's judge Toronto. Let's move on and we'll reserve some time for rebuttal. Thank you. Good morning. May it please the court. I think there's a reason we are struggling with this term and don't have an established term here and that's the Qualcomm was keeping its options of using a broad unclear terms. It wasn't saying already set aside wasn't limited itself to the buffer transport mechanism. It was repeatedly saying that the embodiments were merely exemplary. And we step back and look at the sort of reported benefits here. None of those depend on the buffer already being set aside. Right. The key of this pattern, which is copying the images, the headers first doesn't depend in any way on that. The extra copy steps. Can I can I say I'm having a very hard time hearing you. Is there any way that you can amp up your mic or stand closer to it or something. At any better. Yeah, right then it was. Thank you. I project more into it too. Thank you. So, on the extra copy steps. We have a factual finding from the board appendix 56 that the prior combination we have is just as direct. The data is going right with a push from the primary processor into the intermediate storage area, and then one memory copy operation by the secondary processor to the final destination so that that benefit in terms of eliminating the extra copy doesn't depend on a buffer already being allocated. And to the extent there's anything about copying in or out of the same memory, we have that separation to in the sense that we have entirely different memory in which that intermediate storage area is allocated. Also want to highlight, you know, there are four things you're not going to see in the past, right, you're not going to see any discussion of a benefit that can only be achieved with the buffer already being set aside patent doesn't doesn't tout any benefits of avoiding time with allocation or any efficiencies there. You're not going to see any statement that's criticizing a so called temporary offer, because it's only allocated for a day wasn't sort of, you know, he's allocated run time. You're not going to see anything that's limiting this to the USB embodiment or even a buffer in the hardware transport mechanism. And then it's just mentioned you're not going to see anything that's as direct you so not to get into anything that's more direct than what we have in the prior. So, in the prosecution history that would guide us to determine whether or not there was an effort to just differentiate the permanent from the temporary or the dedicated from the temporary. Absolutely. We think the prosecution history is very helpful in this case. So, we have the unusual situation in which the Svensson setup, but without the battle, which brought in the separate images and headers was was being looked at by the examiner. The examiner understood the term hardware buffer to encompass the intermediate storage area of Spencer, which is the same intermediate storage area where we're lying. The applicant, then, didn't say, Oh, you're misinterpreting hardware buffer in amended claims to narrow them and it's statements focused on what was it's it's alleged breakthrough, which was transmitting the header. The problem they have, of course, is that alleged breakthrough is exactly what is rendered obvious by Bauer, which wasn't before the patent office. Mr Saunders. Is there any precedent for the idea that if a patent owner does not resist a particular examiner mapping of a reference to a claim limitation, then, therefore, the patent owner has essentially conceded that that that given claim limitation necessarily means what the examiner said it meant. So, so I want to be clear that there, when you look at the lines of cases, there are lines of cases that are trying to apply sort of a stopover. And we're not saying it's an acquiescence or some undeniable concession. But this court has definitely looked at exchanges like this as informing the claim construction. So in the L'Oreal case that's discussed in the briefs, you know, one part of that was the statement when the amendment was being made of, oh, we're just trying to capture the same thing we had before. The other thing the court's opinion noted, though, was that in comparing the claims to the prior art, the applicant was distinguishing itself over prior art, it wouldn't have to if there was a different meaning of where you measured the concentration. So that was telling. And then I think, you know, there's another case, this court has a case called Vitana, I think it's from 2006, that also is sort of saying that it's looking at the examiner understood this term to have a broader meaning. And there's no dispute from the applicant. And in fact, it's amending its claims and going there. So again, it's not this isn't a rigid per se rule. We're not saying you're stopped on pain of silence. But in this case, where you have a claim language that doesn't provide us guidance, a specification that doesn't provide us guidance, and I'd like to discuss that in a moment, the fact that our construction and the board's construction matches the same understanding the examiner had during prosecution, I think is very powerful evidence. Maybe that adds a little color. Okay, but let's get back to the real heart of the problem, which is the term hardware buffer, a term I'm not familiar with. But this patent could have just said buffer, or it could have said temporary buffer. But, and it does say temporary buffer in other places, which raises the inference that a hardware buffer, whatever it is, is something different than a temporary buffer. And, and, and so why shouldn't we be guided just by the word choice that we need to, you know, in this search for the Holy Grail, at least understand that hardware buffer is is not a temporary buffer. Well, so the statements in the specification about a temporary buffer really aren't, they're not distinguishing it because it's temporary. There's no saying that you don't you won't see a substantive criticism. No, I, I completely understand your point of view about the context of this patent, distinguishing the prior art set of buffer operations from the inventive set of buffer operations. And where the temporary buffer was located before, and perhaps where, in your view, the temporary buffer can be located now. But nevertheless, I'm, I'm just more concerned about the word choice, which, again, raises the inference that hardware buffer, as that term is used, not very often, but nevertheless used in this patent, including in the claims, should be understood as, by its nature, being something different from this other noun called the temporary buffer. And, and so it, it feels a little unsatisfying to reach a construction of hardware buffer that, in terms of physical attributes, sweeps in temporary buffers. Could you please help me with that seemingly unsatisfying outcome. Right, so a few points. So one, because the specification itself isn't really setting up that hardware buffer, temporary buffer contrast, I think that the place to look for the contrast is between the hardware buffer and the system. So they're latching on to sort of this very broad term to try to draw a distinction there. And we've tried to accommodate that by saying, well, that then let's think about what hardware is actually being used. And at least in the case, which is what we have in the prior arc here, where you have physically separate hardware from where the image is going to ultimately be loaded, that can give meaning to the hardware buffer. It is, the ISA is a different hardware from the XRAM where it's going to be loaded. So, right, so just that sentence really grates in my ear. It's in fact, the identical set of memory cells, the ones that if not today, then tomorrow will serve as system memory. So, which makes it, this is just, I think, the point that I understand, or at least I take from Judge Chen. I think you have a lot to say, but the very much hardest thing for you is to say, why in the world is this word hardware being used in front of the noun buffer? In some way that makes intuitive sense of that word, and not just by finding a way that a form of words can give it a non-zero meaning. If it's exactly the same memory cells that every other day of the week is being used as system memory, and it is configured with the right wires and the right set of signals in exactly the same way, but it's just being used for this waystation function, it's peculiar on its face to call that set of memory cells being used today for that purpose. As a hardware buffer. Peculiar, maybe so peculiar that everything else doesn't matter, or maybe not. But that to me is the hard thing for you. Right. So, I mean, one thing I'll say is there's no disagreement between the parties that a hardware buffer can be RAM, right? The accused buffer in the Apple trial was RAM. I'm afraid I'm deepening the mystery here, but I think we all are struggling with what Qualcomm has drafted here. But on this level of the cell, for us, as you think about the Svensson-Bauer setup, the actual help execution of the image that is moving through the intermediate storage area will not be happening in that intermediate storage area on any game, because it's being sent to the upstream. I'm sorry, but it will be, if not today, then tomorrow, happening in that very same set of memory cells. No, Your Honor. The execution of the image, the final destination in Svensson-Bauer is the external memory, not the internal memory. But I thought, so this is why the concreteness matters so much to me. My understanding, and tell me if this is wrong, is that the set of memory cells labeled in Svensson, the intermediate storage area, is just a bunch of certain of the RAM cells. I forget the SA RAM and the DA RAM that are part of, and I want you to put aside your argument about what the system memory is and the X RAM over on the side. Just please put that aside. My understanding is that the intermediate storage area cells are just the very same cells that could be, and the next day, could easily be used for the SA RAM and DA RAM functions. They are cells within SA RAM and DA RAM. The destination, where you are sending the image for execution, is not SA RAM and DA RAM. It's the X RAM. It's a different... I thought that that's actually a distinct argument from, and that's kind of your backup argument, that the actual system memory is over an X RAM in Svensson, an as-applied argument. And so it doesn't matter whether the ISA is temporary or not. Whatever else it is, it's never an X RAM. I think that's just a whole different argument. Right. So the other, I guess, uncertainty here is we, in terms of, oh, those same cells will be used for something else tomorrow. I'm really not sure that's right in the sense that they're allocated right at runtime. They're never deallocated. I'm sorry. Wait a minute. They're never deallocated until the power goes off. And then they're deallocated. No? Right. Correct. When the power goes off, they're deallocated. Any RAM, the accused RAM in the Apple trial, isn't storing anything. It isn't serving as memory when the power goes off. But what I was saying is there's no... Svensson doesn't then say, oh, allocate somewhere else tomorrow. It may well be, and would certainly vendor obvious, having software that's just allocating the same cells anytime. It could be, but there's no... I mean, I take it that the entire difference here is the difference between whether the same memory cells can be used for the place of execution of the software after it's finished with the buffer or cannot. And their position is cannot. Your position is can. Right. And maybe one way out of this dilemma is if we connect it to the purported benefits of the invention. Well, I guess I'm going to just, for purposes of this discussion, agree with you that the point that Judge Chen was discussing a good deal, which is that the copying and header and functions could just as easily be performed with a allocate standard RAM memory cells for the day. I want to accept that for this. Nevertheless, you would have all those benefits just from using the word buffer in the claim. And this claim doesn't say buffer. It says hardware buffer. So what is it that that adds? I don't mean what benefits it adds. Presumably it does add an allocation benefit, and maybe there's some extremely... There's no express calling out of that as a benefit, though there is a mention of allocation. And I don't think Dr. Reinhardt touts that as a benefit. But just getting back to this point, it seems very peculiar to add the word adjective in front of that buffer if there isn't some, and now I'll just use the word permanent, today, tomorrow, and every other day, limitation of the use of those memory cells to the buffer function to the exclusion of using them for the rest of the system memory function. Well, let me take another shot at it. The reason it's important to link this to the purpose here is because that permanence isn't getting you those benefits. The physical separation, viewing it as, well, this is a hardware buffer in the sense that it's in different hardware from our final destination, that can be helpful. Because if you're trying to read out of a memory and copy into that same memory, there can be inefficiencies. But as our expert talked about in his remand reply declaration, as long as you're taking it and you have sort of one piece of hardware over here, whether it is already allocated or allocated at runtime, set aside, doesn't matter. But as long as that is one piece of hardware, and your destination for execution is on another piece of hardware, you don't end up reading and writing in and out of the same memory, you can be very efficient in moving it over from one piece of hardware to another. So we think that's in the search for meaning for hardware, that that is a way to give meaning to the term that actually comports with an efficiency benefit. It would comport with the column five disclosure about RAM 112, which is about where it's talking about sort of the final destination and the temporary buffer there. So it's copying in and out of that same RAM. No, we're going from one RAM, the internal one, to the other RAM. And that gives me hardware. But I concede, Your Honor, this is a struggle. And just where, I think you referred to, is it Dr. Lin? Is that who your expert is? Correct. And you said, where did he explain that something concrete about the efficiency benefits of staying, I have an intuition about this one, but where did he explain about the efficiencies of having basically to address only some physically distinguished component, part of memory for one function and the other function? You skip a whole bunch of the bits on the address lines because you're always within, you know, I don't know, the middle 12 bits or something. So on 2457 of the appendix, he talks about the efficiency is due to the separation. And then he follows up at 2470 of the appendix to elaborate on this same point. And talk about how, you know, because you have the separation means instead of copying and writing back into the same memory, the data segments are copied to the distinct claims system memory. And he says on that same page, 2470 is just as fast and efficient. And he talks about, so that's because the internal memory and balance fence is operating near the speed of the processor. But so those are the relevant passages where he's saying, as long as you're maintaining this physical separation between those two memories, you're getting the efficiency. And my broader point is, if we are struggling this much with this term, then under the BRI standard and under the public notice function, the fact that we can give a meaning to hardware that comports with an efficiency benefit and is consistent with the claims and specification, and is the same understanding the examiner had in prosecution, surely has to mean that under the BRI standard, they can't come back and narrow this. And as I started, I think there was a deliberate attempt. Qualcomm was the one in control here. It chose the term to use. It didn't provide this additional guidance in the specification and distinguish its claims. It thought, get these claims issued on other grounds. At every step along the way, including the opportunity to file a motion to amend in the IPR itself, it could have brought clarity here. And when it didn't, and when it tried to maintain that breadth there, then we should be okay to interpret the claims the same way the examiner did during prosecution and have them read on a prior art system that, as we've been discussing, achieves every benefit that they are saying that they achieved. Any other questions? Thank you. Ms. Sweezy, will we store three minutes of rebuttal if you need it? Thank you, Your Honor. I will try to be quick and go through several points. First, Intel's expert Dr. Lynn and Intel are overreaching on broadest reasonable interpretation. It's not hypotheticals. It's not what other systems could do. It's what our system does. You have to look at the intrinsic evidence. Intel says there's no guidance in the claim language or specification. This court already disagreed with that. And on that guidance, at column one, lines 30 to 31, the patent makes very clear, this is devoted to efficiently communicating data. And it achieves that, this particular configuration, which is exactly what we accused and a jury had no trouble finding in the litigation. We accused a permanent dedicated hardware buffer in the sense that it is not a temporary buffer that is allocated. That buffer is the way that Qualcomm's system achieves avoiding copying. If you let it be a temporary buffer, you're right back to what the prior art did and what Qualcomm distinguished. Ms. Sweezy, sorry to interrupt, but your theory that a hardware buffer is a permanent buffer, can you explain why is it that a so-called permanent buffer is something that is limited to using the exact same memory cells forever? That's another little gap that I never completely understood. I mean, we seem to be assuming that the term permanent buffer necessarily means this particularized kind of configuration of a memory, of a buffer. And I didn't quite pick up on why that must necessarily be so. And I don't know, why can't there be other kinds of hardware buffers that don't necessarily require that? Or why can't it be that there are other kinds of permanent buffers that aren't necessarily preordained in that same manner? I understand the point, Judge Chen, and we are defining hardware buffer in the context of this patent, so not suggesting that every hardware buffer has to be permanent. But here, as we've noted, as the court noted in the prior opinion, we didn't just say buffer. Both in the claims, we said hardware buffer, and we didn't just say buffer in discussing the prior art, we said temporary buffer. So in the context of this patent, this patent is using a set-aside dedicated space for a dedicated purpose. I think of it as my desk. I can move things around on my desk, and one day devote this area to this set of briefs, and another move it around, and another day devote another set. But I have a permanent drawer that's going to consistently store my pens and paperclips. And maybe it's not permanent in the sense of being philosophically, I'm not going to get into the mechanics of it, but that's what we're talking about here, using the permanent space. So that you can avoid having to create a temporary buffer. So they are linked. And it's not just enough to say it's distinct from system memory, as this court also already noted. Let me say, there's nothing that turns on the type of memory here. There is no such argument by Intel in its briefing, and no such finding by the court. So that is a red herring. What matters, if you want to think about it in terms of type of memory, it's special purpose memory versus general purpose memory, system memory. Everybody agrees, Dr. Lin included it, Appendix 2172, that that's general purpose. This is a special purpose, and it can't be special purpose if it could be something different every time. In terms of the number of copy operations, that is too abstract a level. Our claim is not about reducing from X to Y copy operations. It's the way we did it. And that's in the specification and the intrinsic record. And the prosecution history, a whole host of reasons that did not directly address the term hardware buffer. At Appendix 1563, Qualcomm itself said, we're only giving some examples here where we read over the prior art, not exhaustive. And I would point the court to that. I see him over time. Thank you, Your Honor. Thank you. We thank both sides. The case is submitted.